Dear Mr. Duncan:
Reference is made to your request for an opinion of this office regarding funds held by certain paying agent banks for the payment of outstanding bonds and coupons of the State of Louisiana, associated with certain issues of bonds representing state debt.
According to your correspondence, the State has, until 1994, entered into relationships with paying agent banks without written agreements. Furthermore, in connection with certain older bond issues, banks domiciled within Louisiana were often teamed with out-of state banks (principally in New York) as "co-paying agents" and the co-paying agent banks did not always reconcile the transfers of funds which occurred between them. Consequently, the paying agents retained in connection with some bond issues have deficits, and those retained in connection with other bond issues have surpluses. Additionally, some paying agent banks have both surpluses and deficits, but the surplus relates to one bond issue, the deficit to another.
We also note your advice that funds held in paying agent accounts have historically been treated as belonging to the bondholders rather than the State, regardless of whether the coupons or bonds have ever been presented for payment.
With regard to these accounts, you have asked this office to address the following questions:
 1. Does the Treasury and/or the State Bond Commission have the authority to require paying agents to return excess debt service funds for which neither coupons nor bonds have been presented?
It is the opinion of this office that the disposition of funds which have been held by paying agent banks for disbursement to holders of state coupons or bonds is controlled by Louisiana's Uniform Unclaimed Property Act, La. R.S. 9:151, et seq. ("LUUPA"). Pertinently, La. R.S. 9:153(12) (e) provides:
 "`Property' means a fixed or certain interest in intangible property that is held, issued, or owed in the course of a holder's business, or by a government or a governmental entity, and all income or increments therefrom. The term includes property that is referred to as or evidenced by the following:
* * *
 (e) Money deposited to redeem stocks, bonds, coupons, or other securities or to make distributions."
In accordance with La. R.S. 9:154A, if a holder (such as a paying agent bank) has held such funds for more than five years after the obligation to pay or distribute the funds to a bond or coupon holder arises, the funds are presumed abandoned (La. R.S.9:154A(15)), and the paying agent bank must file a report with the Department of Revenue as required by La. R.S. 9:159.
 2. Once bonds and/or coupons have prescribed, is the State relieved of the duty to pay them so that any excess funds held by paying agent banks can be returned to the treasury?
It is the opinion of this office that once a bond or a coupon has prescribed, the issuer is relieved of the duty to pay the obligation represented thereby to a bond or coupon holder in accordance with La. C.C. Art. 3498. However, in accordance with the reasoning set forth in Louisiana Health Service and IndemnityCompany v. Tarver, 93-2449 (La. 4/11/94), 635 So.2d 1090), we are constrained to advise that the expiration of the five-year liberative prescriptive period on the State's obligation to pay a bond or coupon does not prevent the funds held by paying agents for the purpose of paying those bond or coupons from being presumed abandoned for purposes of LUUPA. Consequently, a paying agent bank that is the holder of such property should file a report and deliver the funds in question to the Department of Revenue as required by LUUPA. See La. R.S. 9:171.
 3. If paying agents have remitted excess debt service funds to the Department of Revenue as abandoned property, can the State Treasury and/or the State Bond Commission claim such funds after the bonds and/or coupons those funds would have paid prescribed?
It is the opinion of this office that in accordance withLouisiana Health Service and Indemnity Company v. Tarver, supra., the State, through the Treasury, the Bond Commission or any other department, is prohibited from claiming ownership of such funds. However, as recognized by that decision, the State, through the Department of Revenue, does have the right to become custodian of abandoned property in accordance with LUUPA. The State, through the Department of Revenue, "is a statutory obligee to whom the [holder of abandoned property] is statutorily obligated to report and pay or deliver that `property' if it becomes presumed abandoned." Louisiana Health Service and Indemnity Company v.Tarver, supra.
 4. Do coupons and bonds prescribe as each becomes due or does an entire issue prescribe at once?
La. C.C. Art. 3498 provides:
 "Actions on instruments, whether negotiable or not, are subject to a liberative prescription of five years. This prescription commences to run from the day payment is exigible."
In accordance with this provision, it is the opinion of this office that prescription on coupons and bonds commences as each payment becomes due or payable.
 5. In instances where the paying agent has paid more for debt service than required by the issue, does the State have the authority to "reimburse" the paying agent for the overpayment? If yes, which state entity(ies)?
Your request for an opinion of this office indicates, and the Director of the State Bond Commission has confirmed, that with regard to the funds which are the subject of this opinion, the State has always remitted sufficient funds to its paying agent banks for the purpose of paying debt service to bond and coupon holders.
If the State has submitted sufficient funds to a paying agent, it should have no further obligation to that paying agent, and in such instances it is the opinion of this office that the state should not "reimburse" a paying agent for such deficits. La. Const. Art. VII, Sec. 14.
 6. Under what authority can a paying agent bank or the State redeem a coupon or bond against an issue with a zero or negative paying agent account?
It is the opinion of this office that if an unprescribed coupon or bond is properly presented, it must be paid to the holder. The State, as debtor/issuer, is liable to bond and coupon holders for such obligations as are set forth in the bond documents. Additionally, a paying agent bank that has received sufficient funds from the State to make such payments should also redeem such coupons in its capacity as a fiduciary. We note that in a situation in which the State has provided the paying agent with sufficient funds, the negative posture of the paying agent account would appear to be the responsibility of the paying agent bank.
 7. In a case where a bank is handling multiple bond issues, and reconciliation procedures in the past between co-paying banks have been deficient, does the State have the authority to "bundle" paying agent account balances consisting of overages and shortages for specific issues, to facilitate payment in the event a coupon is presented for redemption against an issue whose debt service account is in a deficit posture?
As the funds in question represent funds owed to bond holders, it is the opinion of this office that the state should not authorize the "bundling" of funds in accounts associated with different bond issues.
We trust the foregoing to be of assistance. Please do not hesitate to contact us if we can be of assistance in other areas of the law.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _______________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI:JMZB:jv
DATE RECEIVED: 7/29/98
DATE RELEASED:
JEANNE-MARIE ZERINGUE BARHAM
ASSISTANT ATTORNEY GENERAL